## NATIONAL BANK OF IONIA v. HOUCK.

1. TRUSTS—CONTRACTS—EVIDENCE—SUFFICIENCY.

In suit to pursue trust fund invested in building, title to which is in defendant, finding of trial court that trustee purchased building under agreement that he was to pay defendant no salary for working for him, that he was to have office in building during his lifetime, and that if he survived defendant he was to take title, *held*, justified by competent evidence.

2. SAME—CONSIDERATION—GOOD FAITH—MISAPPROPRIATION.

Where only restriction imposed on use of trust estate by beneficiary was that it be for his personal support and use, court may not inquire whether he received full consideration for funds, if transaction discloses benefit or advantage to him and that he acted in good faith; inquiry being whether he committed wilful and deliberate misappropriation of estate.

3. SAME—USE BY BENEFICIARY OF TRUST ESTATE.

Where trust gave beneficiary power to dispose of estate for his use, his purchase of building for defendant with trust funds under agreement that he was to pay defendant no salary for working for him, that he was to have office in said building during his lifetime, and that if he survived defendant he was to take title, *held*, not misappropriation of funds, but within powers granted to him under trust.

Appeal from Ionia; Hawley (Royal A.), J. Submitted January 5, 1932. (Docket No. 10, Calendar No. 35,634.) Decided March 2, 1932.

Bill by the National Bank of Ionia, successor in trust to William F. Sandell, trustee, against Nell M. Houck and another to pursue trust property. Decree for defendants. Plaintiff appeals. Affirmed.

*Glenn D. Mathews,* for plaintiff.

*Eldred & Gemuend* and *F. C. Miller,* for defendants.

FEAD, J. This is a bill to pursue a trust fund. In November, 1904, Mary Sandell conveyed all her property, recited as worth over $20,000, to her only child, William F. Sandell, in trust. In general, the trust instrument provided that the mother have all the net income during her lifetime; that if William's wife, Martha, survived her, William and Martha should have the income and so much of the principal as was needed for their use, for life; and, on the death of both Mary and Martha, the whole estate—

"shall immediately vest and become the sole and absolute property of the said William F. Sandell, and his assigns, for his personal use and support during his life, with full right to dispose of any or the entire estate, both real and personal, should he so desire for his support and use."

The instrument made substantially a like provision for Martha in case she survived the others. It also provided for devolution upon the nieces and nephews of Martha and Mary.

"Should the parties hereto not use during their lives all of the estate all that remains after the death of all of them shall be divided as follows:"

It gave William full control of the property, required him to keep accounts, and provided that he—

"shall not be held responsible personally for any loss incurred by bad investment or otherwise except when wilful and deliberate misappropriation thereof."

Martha died in 1911, Mary, in 1915, and William, at the age of 67, on March 1, 1927. At the time of William's death the estate held 188 pieces of real estate, 13 mortgages, 64 land contracts, aggregating over $50,000, bonds of about $13,000, and stocks of $25,000, thus requiring considerable office work to handle.

William was a private banker, but the bank failed in 1922 and a receiver was appointed. He was also interested in an insurance agency. In 1924, defendant Mrs. Houck was employed to manage the agency. She also did work for the bank receiver and for Mr. Sandell in connection with the trust estate. In 1925, the insurance agency was sold to Mrs. Houck and Nell G. Steele. Mr. Sandell continued to conduct his trust and private business in the same building, and Mrs. Houck did work for him.

In March, 1926, the Lapham building nearby was for sale. Sandell suggested that Mrs. Houck buy it and offered to furnish the money. The purchase was made, the title conveyed to Mrs. Houck by deed dated March 27th, and her ownership was noted in the local papers and well known. Out of trust funds, Sandell paid the purchase price of $3,750 and sums for repairs, which brought the total to $6,231.13.

April 26th, Mrs. Houck executed a quitclaim deed to Sandell as trustee, which she destroyed immediately after his death. Books of the estate contain a pencil memorandum of the deed, but the testimony does not show that it was ever delivered.

After the purchase, the insurance agency and Sandell's affairs were moved to the Lapham building. Mrs. Houck continued to work for Sandell in his private and trust matters but without pay, pro-

vided him office room without cost, and paid the expenses of the building herself.

Her claim of agreement with Sandell, so far as it is supported by competent testimony, is that he was to pay her no salary for working for him, he was to have his office in the building during his lifetime without cost, and if he survived her he was to take title to the property. The court found this agreement established by the testimony and we concur in the finding.

Sandell's purpose in the transaction may be gathered from the fact that he had expressed confidence in Mrs. Houck, thought her competent to handle his business, and he desired more leisure for himself, with possibility of travel.

The right to follow trust funds diverted from the trust purpose needs citation of no authority. The question here is whether there was a diversion. Assuming that, on the death of his mother and wife, William Sandell did not become vested with an absolute title to the trust estate (*Quarton v. Barton,* 249 Mich. 474 [69 A. L. R. 820]), nevertheless the broad powers of disposition granted him are not to be narrowed by analogy to other trusts to defeat the will of the donor. Both from specific language and the general purpose of the trust, only one restriction was imposed on his power of disposition—that it be for his personal support and use. The power is not confined to procuring the necessaries of life, but covers also his comfort and rational pleasures. As long as connection between the disposition and his personal use appears and the transaction discloses such benefit or advantage to him that it may be said that, acting in good faith, he did and fairly could determine it was for his use, it is not for the court to measure, with fine calipers, either the character

or proportion of benefit to ascertain whether he received full consideration for the funds. In substance, the inquiry is whether he committed a wilful and deliberate misappropriation of the estate.

The benefit to Sandell was in that he acquired a permanent place for the conduct of his business, made sure, for his lifetime, of the services of one whom he had found competent and trustworthy to manage his business, so that his labors were lightened and he had the leisure and opportunity to travel which he desired. All this was obtained through the money paid on the property and secured by the property itself. Normally, he had an expectancy of 10 years. The amount advanced was not so disproportionate to any fair value which could be placed on the benefits as to warrant the conclusion that the advance was a mere gift, not for his use, and constituted a misappropriation of the estate. The transaction was for his use, comfort, and benefit, and it must be held as within the powers granted him.

Decree for defendants affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.